# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOHN FLOWERS a/k/a
CRAIG JACOBSEN, JR.,

      Plaintiff

v.

ISIDRO BACA, et. al.,

      Defendants

Case No.: 3:14-cv-00366-RCJ-WGC

**Order**

Re: ECF No. 47

Before the court is Defendants' motion asking the court to screen Plaintiff's first amended complaint, filed by Plaintiff's appointed counsel. (ECF No. 47, errata at ECF No. 48.)

## I. BACKGROUND

Plaintiff, who is incarcerated within the Nevada Department of Corrections (NDOC), originally filed his application to proceed in forma pauperis (IFP) and pro se complaint on July 15, 2014. (ECF Nos. 1, 1-1.) Plaintiff's complaint alleges the forced administration of the antipsychotic drug Zyprexa for his psychiatric conditions of schizophrenia and bipolar disorder at a dangerously high dosage. He claims that he suffered serious side effects from the drug, including diabetes and significant weight gain, and that Defendants knew or should have known about these risks (from other litigation involving this drug and label changes). District Judge Jones granted Plaintiff's IFP application, but dismissed the complaint finding: in Count 1, Plaintiff improperly challenged his criminal conviction in a section 1983 action by claiming he was legally incompetent due to the psychotropic drugs in his system; in Count 2, Plaintiff's allegations amounted to medical malpractice and were not cognizable under section 1983; and in

Count 3, that Plaintiff did not state a claim relative to his allegation that Defendants failed to notify him of a class action lawsuit against pharmaceutical company Eli Lilly regarding Zyprexa, advising him that his remedy was to petition the court where the class action was litigated if he felt he was improperly excluded from the class. Judge Jones entered judgment and closed the case. (ECF Nos. 5, 8.)

Plaintiff appealed the dismissal of Counts 2 and 3 of his complaint (but not Count 1). (ECF No. 9.) On November 4, 2016, the Ninth Circuit issued a memorandum decision vacating the dismissal and remanding this action to the district court. The Ninth Circuit held that the district court erred by dismissing the claims without affording Plaintiff an opportunity to amend. The Ninth Circuit ordered that the dismissal be vacated and Plaintiff be granted an opportunity to amend Counts 2 and 3, and to "allow him to develop claims generally asserted under the Americans with Disabilities Act and the Fourteenth Amendment, both of which he invoked as jurisdictional bases for his complaint." The Ninth Circuit also ordered that Plaintiff be appointed counsel on remand. (ECF No. 19.) The order on the mandate was issued on January 4, 2017. (ECF No. 22.) That same date, Judge Jones referred this case to the pilot pro bono program for appointment of counsel. (ECF No. 23.) It appears that the panel was not successful in securing counsel for Plaintiff, and on January 11, 2018, Judge Jones issued an order giving Plaintiff 28 days to file an amended complaint. (ECF No. 24.)

Plaintiff filed motions for appointment of a guardian ad litem and appointment of counsel. (ECF Nos. 25, 26.) He also filed an appeal. (ECF NO. 27.) The appeal was dismissed for lack of jurisdiction. (ECF No. 29.) On August 3, 2018, the Judge Jones ordered Mary Lou Wilson, Esq., appointed to represent Plaintiff. (ECF No. 33.) Therefore, the motion for

2

appointment of a guardian ad litem and counsel were denied. (ECF No. 34.) Plaintiff was ordered to file an amended complaint by October 2, 2018. (ECF No. 34.)

No amended complaint was timely filed; however, Ms. Wilson filed a motion to withdraw as counsel on February 12, 2019. (ECF No. 35.) The court granted the motion to withdraw, and the matter was referred back to the CJA coordinator to secure a replacement panel attorney to represent Plaintiff. (ECF No. 36.) On March 4, 2019, Angela H. Dows, Esq., was appointed as counsel for Plaintiff. (ECF No. 37.) On August 27, 2019, Judge Jones granted Plaintiff's motion to extend the deadline to file an amended complaint and gave Plaintiff 60 days to do so. (ECF No. 42.)

The first amended complaint (FAC) was filed by Plaintiff's new counsel on October 25, 2019. (ECF No. 43.) The summonses were issued. (ECF No. 45.)

On January 2, 2020, Defendants filed their motion requesting that the court screen the FAC. (ECF No. 47.) The motion requested that the court "re-screen the complaint," and the errata (ECF No. 48) reflects that counsel overlooked the filing of the FAC, but still asks the court to screen the FAC.

## II. MOTION TO SCREEN

The court maintains the belief that screening counseled cases is not an efficient use of judicial resources, and that the concerns underlying 28 U.S.C. § 1915A are typically not present in a counseled case. The court will nevertheless grant Defendants' motion and screen the FAC because Defendants are correct that 28 U.S.C. § 1915A states that the court "shall review … a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and identify cognizable claims or dismiss claims that are frivolous, malicious, fails to state a claim upon which relief may be granted or seeks

monetary relief from a defendant who is immune. The statute does not differentiate between those prisoners who are proceeding pro se and those who are represented by counsel. Therefore, unless Congress amends the statute to exclude counseled cases from screening, the Ninth Circuit rules that counseled cases are excluded from screening, or Defendants waive the screening requirement in a particular case[1], the court interprets the statute as requiring both pro se and counseled prisoner cases be screened. As such, Defendants' motion (ECF No. 47) is granted.

Given this decision, in all but the exceptional case, a motion to dismiss for failure to state a claim filed after the court has screened a counseled (or uncounseled) case will not be favorably received because the claims will have already been screened for failure to state a claim in the initial order under 28 U.S.C. § 1915A.

### III. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

---

[1] Defense counsel should undertake his/her own preliminary review of a complaint or amended complaint to determine whether screening is warranted. If a problem is perceived with the complaint or amended complaint, defense counsel might even reach out to the plaintiff's counsel to try and resolve the matter informally by way of a voluntary amendment to the complaint.

governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's FAC**

The FAC names the following defendants: Isidro Baca, Lisa Walsh, Dr. Ronald Centric, J. Harris, Dr. Stone , Dr. Bannister, Dr. Spiro, John F. Keast, Terri Jacobs and Greg Cox. (ECF No. 43 at 1.) He brings this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA).

Plaintiff alleges generally that Zyprexa has been used to treat certain mental/mood disorders, and the risks of the drug were well documented in multiple product liability lawsuits but also by the FDA, medical groups, drug manufacturers, and in the press. Specifically, the label warned about the risk of elevated blood sugar levels, and it was found that the drug caused diabetes more than other antipsychotic medications. The label also warned about weight gain, high cholesterol and other metabolic problems. The drug's manufacturer, Eli Lilly, has been sued by patients, states attorneys general, and other individuals and organizations regarding the drug.

Plaintiff suffers from schizophrenia and bipolar disorder. He alleges that one or more defendants, including Dr. Centric, prescribed him antipsychotics, and one or more Defendants forced him to take Zyprexa, that was administered at higher than the recommended dosage. One or more of the defendants refused to stop or change the medication despite its detriment to his health. He avers that the medication caused him to be diagnosed with diabetes and suffer from thyroid issues, impaired vision, swelling of the feet, pain, water retention, "cotton mouth", weight gain, and mental competency issues. In addition, he claims that the medication damaged

his liver such that he required a liver transplant. He avers that the Defendants knew of the

dangers of the drug, yet ignored the risks, and did not warn Plaintiff of the risks.

Plaintiff filed grievances related to these issues. They were reviewed by defendants,

including: Lisa Walsh, Terri Jacobs, and/or John Keast.

**1. Count 1: Denial of Medical Needs Pursuant to the Eighth Amendment**

Plaintiff alleges that "one or more Defendants" knew of and disregarded an excessive risk

to Plaintiff's health and safety, including the risk-profile of Zyprexa; and knew and ignored the

risk that the medication would cause Plaintiff diabetes and/or suffer from other physical and/or

mental health issues. He avers that prescribing him high doses of Zyprexa caused him to develop

diabetes and other physical and mental health issues. He avers that this was deliberately

indifferent to his serious medical needs, and was medically unacceptable under the

circumstances. He further alleges that liability should be imposed not only on the officers who

directly engaged in the unconstitutional conduct but also on the supervisory officials based on

the fact that they knew or should have known that there was a danger the subordinate would

engage in unconstitutional conduct and the supervisor had authority to take steps to prevent the

conduct but failed to act. (ECF No. 43 at 9-11.)

Preliminarily, 42 U.S.C. § 1983 provides a mechanism for the private enforcement of

substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a

source of substantive rights, but merely provides a method for vindicating federal rights

elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and

citation omitted). To state a claim under section 1983, a plaintiff must allege: (1) his or her civil

rights were violated, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S.

42, 48-49 (1988). To adequately plead the section 1983 elements, a complaint must identify what

1    constitutional right each defendant violated, and provide sufficient facts to plausibly support

2    each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants

3    must personally participate in misconduct to be liable under section 1983).

4         A prisoner can establish an Eighth Amendment violation arising from deficient medical

5    care if he can prove that prison officials were deliberately indifferent to a serious medical need.

6    *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the

7    examination of two elements: "the seriousness of the prisoner's medical need and the nature of

8    the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992),

9    *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also*

10   *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091,

11   1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition

12   could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

13   *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

14        If the medical need is "serious," the plaintiff must show that the defendant acted with

15   deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

16   omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

17   1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or

18   even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

19   under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present

20   when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

21   official must both be aware of the facts from which the inference could be drawn that a

22   substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

23   511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted). Deliberate

indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiff alleges that one or more of the defendants knew of and disregarded an excessive risk to Plaintiff's health, including disregarding the risk-profile of Zyprexa and the risks of prescribing high doses of Zyprexa, including and that it would cause him to develop diabetes and other health issues.

Plaintiff includes very minimal allegations that a defendant knew of and disregarded an excessive risk to his health. He failed to include *factual* allegations that connect alleged unconstitutional conduct to a particular defendant. He states earlier on in the FAC that Dr. Centric prescribed him antipsychotics, and that one or more Defendants forced him to take Zyprexa, but he never alleges who was responsible for prescription and/or administration of Zyprexa; that they specifically knew of the risks attendant to Zyprexa; and, that a particular defendant failed to act to warn him or take him off of the drug. Plaintiff must connect the alleged

9

1 unconstitutional conduct with a particular Defendant with the use of factual allegations. In other

2 words, it is unclear what defendant(s) Plaintiff seeks to implicate in Count 1, or what they did

3 that subjects each defendant to liability.

4      Plaintiff also attempts to assert a supervisory liability claim against unidentified

5 supervisor defendants. "'Under section 1983, supervisory officials are not liable for actions of

6 subordinates on any theory of vicarious liability.'" *Snow v. McDaniel*, 681 F.3d 978, 989 (9th

7 Cir. 2012) (en banc) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). "A

8 supervisor may be liable only if (1) he or she is personally involved in the constitutional

9 deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful

10 conduct and the constitutional violation.'" *Id*. (quoting *Hansen*, 885 F.2d at 646).

11      The causal connection can include: "1) [the supervisor's] own culpable action or inaction

12 in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional

13 deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous

14 indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir.

15 2013) (citations and internal quotation marks omitted). "The requisite causal connection can be

16 established by setting in motion a series of acts by others, or by knowingly refusing to terminate

17 a series of acts by others, which the supervisor knew or should have known would cause others

18 to inflict a constitutional injury." *Id*. (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir.

19 2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 30, 2012)) (internal quotation marks omitted).

20      Plaintiff's inclusion of conclusory language to attempt to impose supervisory liability on

21 unidentified defendants is insufficient. Plaintiff must include *factual* allegations that support a

22 claim against a supervisor defendant and connect those factual allegations to a particular

23 defendant. It appears that Plaintiff seeks to hold grievance responders liable. While denial of a

grievance can potentially subject a defendant to liability, there must be factual allegations that the grievance put the grievance responder on notice of unconstitutional conduct and the responder failed to act. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014).

Accordingly, Count 1 is dismissed with leave to amend.

### 2. Count 2: Unconstitutional Conditions of Confinement

Plaintiff re-asserts the allegations above, and states that Defendants exposed him to a substantial risk of serious harm and he was incarcerated under conditions posing a substantial risk of serious harm by disregarding the risk-profile of Zyprexa. Again, he asserts that liability should be enforced on the officers who directly engaged in the unconstitutional conduct and supervisory officials because they knew or should have known there was a danger the subordinate would engage in unconstitutional conduct and failed to take steps to prevent the conduct. (ECF No. 43 at 11-12.)

The allegations of Count 2 are duplicative of Count 1, and while Plaintiff invokes an Eighth Amendment conditions of confinement claim, the claim sounds in deliberate indifference. Therefore, it is dismissed with leave to amend; however, the court will consider only the deliberate indifference claim under the Eighth Amendment and this should be reflected in any amendment.

### 3. Count 3: Denial of Due Process Pursuant to the Fourteenth Amendment

Plaintiff alleges that his procedural due process rights were violated when the physicians and officials forced him to take Zyprexa and it caused his injuries. (ECF No. 43 at 12-14.) he asserts direct and supervisory liability.

In *Washington v. Harper*, 494 U.S. 210 (1990), the Supreme Court held that an inmate has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs

under the Due Process Clause of the Fourteenth Amendment." *Id*. at 221-22. However, "given

the requirements of the prison environment, the Due Process Clause permits the State to treat a

prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the

inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id*.

at 227.  The Supreme Court also outlined the "procedural protections [ ] necessary to ensure that

the decision to medicate an inmate against his will is neither arbitrary nor erroneous." *Id*. at 228.

The decision whether to medicate an inmate against his will satisfies due process when

facilitated by an administrative review by medical personnel not then involved in the inmate's

treatment. *Id*. at 233. Due process does not require a judicial hearing before an inmate may be

involuntarily medicated. *Id*. at 228. Nor does it require a hearing conducted in accordance with

the rules of evidence or a "clear, cogent, and convincing" standard of proof. *Id*. at 235. Instead,

due process is satisfied if the inmate is provided with notice, the right to be present at an

adversarial hearing, and the right to present and cross-examine witnesses. *Id*. at 235.

Appointment of counsel is not required; the provision of a lay adviser who understands the

psychiatric issues involved is sufficient. *Id*. at 236.

Again, Plaintiff does not include *factual* allegations connecting the forced administration

of Zyprexa to a particular defendant. Nor does he specifically discuss what process he was not

given. The same requirements for proceeding against supervisory defendants apply as in Count

1. Therefore, Count 3 will be dismissed with leave to amend.

### 4. Count 4: Equal Protection

Plaintiff alleges that one or more Defendants acted with an intent or purpose to

discriminated against Plaintiff based upon his membership in a protected class—a prisoner with

mental health issues. He avers that other persons similarly situated were allowed: prison liberty,

movement/access; medical facilities and treatment; and access to the courts or inmate grievance procedure. He asserts direct and supervisory liability. (ECF No. 43 at 14-15.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation and quotation marks omitted). The disabled do not constitute a suspect class under the Equal Protection Clause, and so governmental policies that "purposefully treat[ ] the disabled differently from the non-disabled need only be 'rationally related to legitimate legislative goals' to pass constitutional muster." *Id*. (quoting *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996)). In *Lee*, the plaintiff alleged that there were mentally incompetent persons who come in contact with the criminal justice system and that law enforcement failed to sufficiently train officers in dealing with mentally disabled persons. *Id*. at 687.

Plaintiff has not included sufficient factual allegations to state an equal protection claim. Plaintiff will be given leave to amend to attempt to assert a claim and must connect the alleged unconstitutional conduct with a particular defendant.

**5. Count 5: Violation of the ADA**

Plaintiff alleges that he has one or more documented mental impairments and he was discriminated against by one or more Defendants by being forced to take one or more

medications despite similarly situated inmates not being forced to take these medications, and when one or more Defendants failed to adequately warn him of the side effects of the medication despite similarly situated inmates being warned. He also alleges that one or more Defendants did not provide a reasonable accommodation to Plaintiff related to the medication. Like the other claims, he asserts both direct and supervisory liability.

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id*.

If a plaintiff seeks to state a claim under Title II of the ADA, he or she must allege facts showing that: (1) he or she is a qualified individual with a disability as the term is defined under the ADA; (2) he or she was excluded from participation in or denied the benefits of the services, programs, or activities or subject to discrimination by a public entity (which includes any State or local government, department, agency, special purpose district or other instrumentality of a State or States or local government); and (3) the exclusion, denial of benefits, or discrimination was by reason of the disability. *See* 42 U.S.C. § § 12131, 12132.

The Supreme Court has confirmed that state prisons qualify as a public entity under Title II of the ADA. *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted).

Discrimination under the ADA includes a public entity's failure to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R.

§ 35.130(b)(7); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1214 n. 25 (9th Cir. 2007) (because Congress authorized the Attorney General to promulgate regulations under the ADA, the regulations are given legislative weight unless "arbitrary, capricious, or plainly contrary to the statute."). Plaintiff does not allege what reasonable accommodation was not given.

The court notes that in *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1012 (9th Cir. 2010), *overruled on other grounds by Castro v. City of L.A.,* 833 F.3d 1060 (9th Cir. 2016) (en banc), the Ninth Circuit considered whether a pretrial detainee was excluded from outdoor recreation because of his depression (which he claimed was a disability under the ADA). *Simmons*, 609 F.3d at 1021. The Ninth Circuit concluded that was not the case, and that the denial of outdoor recreation was due to a jail policy restricting inmate activities while an inmate is on suicide watch. *Id*. at 1021-22. The court noted: "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Id.* at 1022 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)).

In *Marlor v. Madison County Idaho*, 50 Fed.Appx. 872, 874 (9th Cir. 2002), the plaintiff claimed that the jail violated the ADA by failing to provide him with medical equipment (rubber crutch tips). In an unpublished decision, the Ninth Circuit held that "[i]nadequate medical care does not provide a basis for an ADA claim unless medical services are withheld *by reason of* a disability." 50 Fed.Appx. at 873 (citations omitted).

Here, Plaintiff includes only conclusory statements and insufficient *factual* allegations in this count. Therefore, his ADA claim is deficient in this regard. Plaintiff will be given leave to amend to attempt to state a colorable ADA claim; however, any amendment must include factual allegations that address the authority cited above, *i.e.*, factual allegations that indicate not just

that Plaintiff's medical care was inadequate, but that he was forced to take antipsychotic

medications and not warned about the side effects *because of* his disability.

      If Plaintiff elects to amend to state an ADA claim, Plaintiff should consider whether the

State/defendant sued in official capacity is the proper defendant. *See United States v. Georgia*,

"insofar as Title II creates a private cause of action for damages against States for conduct that

*actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign

immunity." 546 U.S. 151, 158 (2006)) (noting that the Fourteenth Amendment's Due Process

Clause incorporates the Eighth Amendment guarantee against cruel and unusual punishment, but

remanding to the district court to determine whether the plaintiff's alleged conduct also violated

the Fourteenth Amendment).

### III. CONCLUSION

(1) Defendants' motion requesting that the court screen the FAC (ECF No. 47) is **GRANTED**.

(2) The FAC (ECF No. 43) is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff has **30 days**

from the date of this order to file a second amended complaint correcting the deficiencies noted

above by identifying what constitutional right each defendant violated, and providing sufficient

*facts* to plausibly support each violation. The second amended complaint must be complete in

and of itself without referring or incorporating by reference any previous complaint. Any

allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in

the amended complaint will no longer be before the court. If Plaintiff fails to file a second

amended complaint within the 30 days, the action may be dismissed.

**IT IS SO ORDERED**.

Dated: April 15, 2020

                         William G. Cobb

                         William G. Cobb
                         United States Magistrate Judge